## NABORS et al. v. NABORS. (No. 1203.)

(Court of Civil Appeals of Texas. El Paso. May 5, 1921. Rehearing Denied May 26, 1921.)

**1. Partition ⊜70—Refusal of defendant's requested peremptory charge held proper.**

In a suit to recover an interest in, and for partition of, land, evidence *held* such that it was not error to refuse a requested peremptory charge for the defendants.

**2. Deeds ⊜181—Where community property was deeded to grantee's wife whose name was erased and that of another entered, the deed was destroyed and title remained in grantee.**

Where land was purchased as the community property of plaintiff and his wife and the deed was made to her and subsequently her name was erased and that of D. substituted, D. took no title in himself, and the deed was simply destroyed, so that, notwithstanding deed by D. to children of plaintiff and his wife, the title remaining in plaintiff's wife and upon her death the land passed one half to plaintiff and the other half to the children then living, under Vernon's Sayles' Ann. Civ. St. 1914, art. 2469; and whatever opinion plaintiff might have had as to the alteration as putting title in D., or the deed from D. to the children as conveying title to them, and however long or much he might have acquiesced in the supposed condition of the title, would not effect a conveyance of the title to the children.

**3. Partition ⊜95—Failure to include all the land held not to prevent decree being final.**

That there was no disposition of some of the land would not prevent from being final a decree conforming with the prayer of the petition in the division of the land which followed a former agreement of the parties for partition.

Error from District Court, Eastland County; E. A. Hill, Judge.

Suit by W. J. Nabors against Allen Nabors and others. Judgment for plaintiff, and W. M. Nabors and others bring error. Affirmed.

Conner & McRae, of Eastland, for plaintiffs in error.

C. Nugent and R. L. Rust, both of Eastland, for defendant in error.

WALTHALL, J. This suit was brought by W. J. Nabors on November 8, 1918, in the district court of Eastland county, against Allen Nabors, Florence V. Davidson, her husband, I. B. Davidson, W. M. Nabors, Lewis Nabors, Mattie Allie Self, her husband, W. T. Self, E. J. Nabors, Myrtle R. Ellison, her husband, A. E. Ellison, Earl Nabors, F. M. Jones, guardian of the estate of Tarlton Jones and Roy Jones, minors, being the sons, sons-in-law, daughters and grandchildren of W. J. Nabors, defendant in error, and his deceased wife, Mary Elois Nabors. The purpose of the suit was the recovery of an undivided one-half interest in and partition of 240 acres of land described, and alleged to be the community property of defendant in error and his deceased wife, Mary Elois Nabors.

All the matters in controversy were settled by agreement between all parties prior to the trial, except as between defendant in error W. J. Nabors, and W. M. Nabors, Florence V. Davidson, her husband, I. B. Davidson, and E. J. Nabors, plaintiffs in error. All statements and matters in controversy herein will be considered as applying to the issues presented as between plaintiffs in error and the defendant in error.

Briefly, it was alleged that defendant in error and plaintiffs in error were owners in undivided interests of the 240 acres of land as survivors, husband and children, of Mary Elois Nabors, said land being the community estate of W. J. Nabors and his deceased wife, Mary Elois Nabors; that during the lifetime of Mary Elois Nabors, to wit, on May 21, 1885, the land was purchased of F. K. Wisdom and wife for the consideration of $200 cash paid and two notes, one for $450 and one for $600, the notes thereafter paid. The deed from Wisdom and wife was taken in the name of Mary Elois Nabors, who was to hold same as the community homestead. After the deed from Wisdom and wife had been executed and delivered, the name of Mary Elois Nabors, vendee in the deed, was erased and the name of H. F. Durham substituted. This deed as changed was filed for record and recorded on March 10, 1886. The change in the name of vendee in the deed was made, it was alleged, as a ruse merely to protect the homestead against creditors; W. J. Nabors at that time being in a financial strain. Durham in fact never at any time owned the land, nor was he in possession, nor claimed nor asserted any claim to the land. Thereafter, and before the death of an infant, C. O. Nabors, son of W. J. Nabors and Mary Elois Nabors, and at the request of Mary Elois Nabors, for a recited consideration of $10 paid by S. A. Nabors, esteem, love, and kindred affection, Durham conveyed the 240 acres of land to S. A. (Allen) Nabors, L. P. Nabors, F. V. Nabors, W. M. Nabors, R. L. Nabors, M. O. Nabors, E. J. Nabors, and C. O. Nabors. This deed is dated May 20, 1885, and acknowledged the 9th day of June, 1885. The deed, it was alleged, was never delivered to any of the grantees, but was delivered by Durham to defendant in error W. J. Nabors, and remained in his possession, care, and keeping for more than 30 years prior to the filing of this suit. It was alleged that the

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

grantees in the Durham deed knew, and that it was a fact, that the deed from Durham was made in trust for the benefit of W. J. Nabors and Mary Elois Nabors, and to protect their homestead rights. W. J. Nabors also pleaded the 10 years' statute of limitations; that for more than 30 years plaintiffs in error acquiesced in defendant in error's title and possession of said premises and exercise of ownership over same, and at no time disputed his ownership until in the year 1917, when they began to assert a claim to said land; that by reason of their assertion of claim, and other acts stated, the title asserted by W. J. Nabors has been clouded and to his damages stated.

Defendant in error prayed that as to defendants, other than plaintiffs in error, he have judgment as per an agreement filed and certain instruments indicated, and judgment for an undivided interest in certain tracts set out in an agreed partition deed. The remaining portion of the petition relates to the alleged agreed partition of the land as between defendant here and the other parties to the suit but not adverse parties to this appeal.

The defendants other than plaintiffs in error filed no answer, and are not parties to this appeal.

Plaintiffs in error answered by a number of exceptions, general denial, pleaded the Durham deed, that they have ever since said deed claimed to own the fee-simple title to the land; denied any knowledge of any trust relationship as alleged; that Durham by reason of the deed from Wisdom held the apparent fee-simple title to the land; that through parental love they permitted their parents to use, occupy, and enjoy the land; and that the occupancy of W. J. Nabors has been merely as tenant at will. They pleaded the 3, 5, and 10 years' statutes of limitations and laches of more than 30 years, and estoppel; deny the homestead character of the property at the time of the making of either of the deeds, and from Wisdom to Durham or from Durham to plaintiffs in error, and that if the land originally was the homestead same was abandoned as such for more than 13 years before the trial of this suit, and that W. J. Nabors recognized and acquiesced in the Durham deed to them.

They further pleaded that in 1896 the Martin Brown Company, claiming to own the land under a sheriff's deed, sued in trespass to try title against defendant in error and others, the cause No. 928, in the district court of Eastland county, in which suit it was claimed that the Durham deed was made and the land was held in trust for the use and benefit of W. J. Nabors and in fraud of the creditors of W. J. Nabors; that the grantees in the Durham deed and W. J. Nabors in that suit asserted and claimed that the Durham deed was a bona fide transaction; that by said deed the fee-simple title was thereby conveyed to the grantees therein; that on the trial of that suit defendant in error W. J. Nabors testified in substance that he not his wife had owned or claimed any interest in said land, and that Durham acted in good faith in conveying the land to plaintiffs in error and other grantees in said deed, and that such deed conveyed the fee-simple title to said land to his children, including plaintiffs in error; that the judgment in said cause resulted, in effect, in placing the title to said land in plaintiffs in error and other grantees, in said Durham deed, the issues in said cause being the same in this cause, having been determined against the Martin Brown Company, defendant in error is thereby estopped from now asserting any title to said land.

The cause was submitted to the jury on special issues.

The jury found:

(1) W. J. Nabors and M. E. Nabors were husband and wife and were living together as such prior to 1880, and down to 1914, at the time of the death of M. E. Nabors.

(2) The 240 acres of land in controversy, near Desdemona, was acquired during the marriage of W. J. Nabors and M. E. Nabors, his wife.

(3) The deed from Wisdom and wife was made, executed, and delivered to M. E. Nabors as grantee in said deed on May 21, 1885.

(4) "Was the deed from Wisdom and wife delivered to W. J. Nabors or M. E. Nabors, prior to the erasure of M. E. Nabors' name and the writing in the name of Durham? You will answer this question only in the event you find there was an erasure in said deed." The jury answered, "Yes."

(5) W. J. Nabors paid the purchase price for said land.

(6) W. J. Nabors and M. E. Nabors, his wife, have occupied in open, notorious, and undisputed possession said land for more than 10 years before the filing of this suit.

(7) W. J. Nabors and M. E. Nabors, his wife, during her lifetime, and their children, used, occupied, and claimed said land as a homestead from the time they located there in 1886 until W. J. Nabors and M. E. Nabors, his wife, moved to the place where he now resides.

(8) Judge Dakan prepared said deed and took the acknowledgment of F. K. Wisdom and wife, and after taking the acknowledgment, delivered said deed to Mrs. M. E. Nabors, or W. J. Nabors.

(9) W. J. Nabors never did deliver the deed made by Durham to the defendants (plaintiffs here) nor either of them.

(10) W. J. Nabors never did deliver the deed made by Wisdom and wife to M. E. Nabors to the defendants (plaintiffs here) nor either of them.

(11) W. J. Nabors has had in his possession these two deeds, Exhibits B and C, since the same were executed.

At the request of plaintiffs in error, the court gave to the jury, and the jury answered, the following: W. J. Nabors, with his family, occupied as a home for seven months the storehouse in the town of Desdemona after the execution of the deed (the Wisdom deed) bearing date May 20, 1885, W. J. Nabors occupied for six months said storehouse, with his family as a home, after the execution of the deed (the Durham deed) bearing date June 9, 1885. At the time of the execution of the Wisdom deed, the homestead of W. J. Nabors was in the storehouse at Desdemona. He gave up the place at Desdemona as a homestead immediately after the Wisdom deed was made to the 240 acres, not later than 30 days. W. J. Nabors placed the Wisdom deed and the Durham deed on record, or caused them to be recorded. The name of the grantee in the Wisdom deed was changed. The name was changed from Mrs. M. E. Nabors to H. F. Durham. In the opinion of the jury, W. J. Nabors, his wife, and H. F. Durham were the only parties who knew of the change of names in the deed. The change of the names in the deed was made 19 or 20 days after the date of said deed. The change of names in the deed was made with the consent of W. J. Nabors. Prior to February 8, 1918, W. J. Nabors informed plaintiffs here that he claimed the title to the 240 acres of land as against them. W. J. Nabors did move with his family on the 240 acres of land for the purpose of making the same his home. He made that move about seven months after the Wisdom deed was made, and about six months thereafter the Durham deed was made.

Submitted by the court, and to which the jury answered: W. J. Nabors did not at any time disclaim title in himself in and to the 240 acres of land, and declare that the title to the land was in the children.

Upon the answers of the jury, and additional findings of facts and conclusions of law by the court, judgment was rendered for plaintiff below (defendant in error) conforming the decree in the division of the land to the prayer of the petition, thus observing the division of the land into tracts and tract numbers, as made by all of the defendants in their partition agreement and deeds.

The decree of the court, in part, reads:

"It further appearing to the court that the 240 acres of land has been partitioned and that a division line has been established connecting the center point of the north line with the center point of the south line, and that the plaintiff (defendant in error) claims the east one-half of the said 240-acre tract, and the defendant would be entitled to recover only such land as lies west of said division line, it is therefore ordered, adjudged, and decreed by the court that the division line between the east and west half of said 240-acre tract be and the same is hereby established on the ground as the course and distance between the center points of the north and south lines of said tract.

It further appearing to the court that the defendants to this suit having partitioned as between themselves and the balance of the defendants, and having divested themselves in a partition deed of all right, title, and interest in and to all of the land in said 240-acre tract save and except 6, 8, and 9 as set forth and described in a partition deed dated the 12th day of May, A. D. 1919, in Volume 143, pp. 643–647, Deed Records of Eastland County, Texas, and fully described in plaintiff's petition, the court is of the opinion that said land should be partitioned between the plaintiff and the defendants, W. M. Nabors, F. V. Davidson and husband, I. B. Davidson, and E. J. Nabors; it is therefore ordered, adjudged, and decreed by the court that said land be divided and partitioned between the plaintiff and defendants as follows, to wit: That the plaintiff W. J. Nabors do have and recover of and from W. M. Nabors, E. J. Nabors, Florence V. Davidson and husband I. B. Davidson, the east one-half of subdivisions or tracts 6, 8, and 9 described in plaintiff's petition, the same being 13.32 acres out of the east half of each of said strips, containing in all 39.96 acres of land out of said strips, lying east of said division line as above established, and that the title to said premises be divested out of the said defendants, W. M. Nabors, E. J. Nabors, Florence V. Davidson and husband, I. B. Davidson, and that the title thereto be in all things vested in W. J. Nabors, and that all clouds upon said title, that might exist by virtue of the pretended deed executed by H. F. Durham on the 9th day of June, 1885, be removed and held for naught, and that said deed be canceled and annulled and to be without legal force and effect."

The court then by the decree divested the title out of W. J. Nabors to the west portions of tracts 6, 8, and 9, and vested the title, severally, in W. M. Nabors, E. J. Nabors, and Florence V. Davidson, as in the partition deed; that is, to W. M. Nabors the west one-half of tract No. 6, to F. V. Davidson the west half of tract No. 8, and to E. J. Nabors the west half of tract No. 9.

Plaintiffs in error alone appeal.

[1] The first assignment is directed to the refusal of the court to give a requested peremptory instruction for plaintiffs in error.

The court was not in error in refusing to give the requested charge.

In the view we take of some of the uncontroverted and controlling facts in the case, we need not follow the several lines of argument presented by plaintiffs in error in their several assignments of error.

[2] The 240 acres of land in controversy were purchased by W. J. Nabors and Mary Elois Nabors, husband and wife, from F. K. Wisdom and wife, on the 21st day of May, 1885, taking the deed to the land in the name of the wife, Mary Elois Nabors. The land was the community property of W. J. Nabors and Mary Elois Nabors. After the execution and delivery of the Wisdom deed, the name of Mary Elois Nabors was erased from the deed and the name of H. F. Durham was substituted as the grantee in the deed. It was

never the intention of Wisdom and wife to deed the land to Durham. Durham was never the purchaser. W. J. Nabors and Mary Elois Nabors at no time conveyed the land to Durham. In fact, W. J. Nabors and Mary Elois Nabors did not at any time convey the land to any person. The most that could be said was that W. J. Nabors and Mary Elois Nabors consented that her name might be erased from the deed and the name of Durham be substituted as grantee, and that thereafter W. J. Nabors and Mary Elois Nabors consented to the execution of the deed from Durham to the defendants, including plaintiffs in error.

Mary Elois Nabors died without ever having conveyed the land in controversy.

The question is presented: What was the effect of the alteration in the deed? It will be borne in mind that the deed when altered was fully executed and delivered, and that there is no controversy here between Nabors and wife and their grantor, Wisdom, nor is there a controversy between defendants and Wisdom.

Devlin on Real Estate (3d Ed.) § 460, reads:

"It has always been a difficult matter to say exactly what effect an alteration has upon the effect of a deed. The true rule seems to be that if the deed is altered after execution by a party claiming some benefit under it, or by his privity, its operation as an executed contract is not affected. Titles vested by it are not disturbed, but the party making the alteration is deprived of all future benefits that he might have derived from it, and cannot enforce any executory obligation contained in it. * * * The principle is that it is the instrument and not the estate which is rendered void. When the title is passed by the delivery of the deed, it is immaterial what becomes of the deed afterwards, so far as the title itself is concerned."

In Stanley v. Epperson, 45 Tex. 644, it is said:

"It is perfectly well settled that an erasure or alteration of a deed after delivery, whether recorded or not, does not reinvest the title in the grantor or abrogate or annul the title of the grantee."

In Van Hook v. Simmons, 25 Tex. Sup. 324, 78 Am. Dec. 573, it is said:

"If the grantee of land alter or destroy his title deed, yet (it is said) his title to the land is not gone. It passed to him by the deed; the deed has performed its office as an instrument of conveyance; and its continued existence is not necessary to the continuance of the title in the grantee, but the estate remains in him un-til it has passed to another by some mode of conveyance recognized by law."

W. J. Nabors and Mary Elois Nabors did not convey to Durham. Durham never had any title in him to convey. He took no title in himself by erasing the name of Mary Elois Nabors and substituting his name as the grantee. He simply destroyed the deed, the title yet remaining in Mary Elois Nabors. The title remained in her until her death, and at her death the title passed one half to her surviving husband and the other half to the children then living. Article 2469, V. S.

[3] The pleadings of the plaintiffs in error, in our judgment, are not such pleading over against the other defendants not answering as to justify, the trial court or this court in interrupting or in setting aside the voluntary partition entered into by all of the defendants. Some of them in a contest among themselves, possibly, would not have been entitled to share in the division of the community estate of Mary Elois Nabors.

As the record is here presented, there seems to have been no disposition made of the west one-half of tract or strip No. 1. Tract No. 1 seems not to have been partitioned among any of the defendants, nor was the west one-half of tract No. 1 disposed of by the decree. Such, however, we think would not prevent the decree being final.

If the alteration in the deed as above stated did not have the effect to put the title to the property conveyed by Wisdom to Mrs. Mary Elois Nabors in Durham, Durham had no title to convey and conveyed none in his deed to the defendants. Defendants took their title from their mother on her death, under our law of descent and distribution of the community real estate. Whatever opinion W. J. Nabors might have had as to effect of the alteration in the Durham deed as putting the title in Durham, or the deed from Durham to defendants as conveying title to them, and however long or much he might have acquiesced in the supposed condition of the title, would not have the effect of a conveyance of the title to defendants. The title remained in Nabors and his wife until her death. The authorities referred to by plaintiffs in error under their fourth assignment, in our opinion, have no application to the facts presented here.

What we have said above renders it unnecessary to discuss any of the remaining assignments. We have considered them, and they are overruled.

Believing that the trial court has rendered the proper decree in the case, the case is affirmed.